2015 IL App (2d) 140733
No. 2-14-0733
Opinion filed September 30, 2015

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF CHARLES F.G. KUYK III, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 08-D-1179 |
| KIMBERLY L. KUYK, n/k/a Kimberly L. Larson, | ) ) ) | |
| | ) | Honorable |
| | ) | Kevin T. Busch, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Presiding Justice Schostok and Justice Burke concurred in the judgment and opinion.

**OPINION**

¶ 1   This post-decree matter comes before us a second time, although it presents a different issue: whether the parties' dissolution decree, which incorporated their marital settlement agreement (MSA), prevented either party from filing a petition for the review of maintenance. The trial court determined that, under the terms of the MSA, maintenance had terminated before the former wife's review petition was filed and the petition was, therefore, barred. The trial court further found that it lacked jurisdiction to consider the petition. We reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3    Petitioner, Charles F.G. Kuyk III, and respondent, Kimberly L. Kuyk, n/k/a Kimberly L. Larson, were married in 1980.  Their marriage resulted in one child, now emancipated.

¶ 4    The trial court dissolved the parties' marriage on April 22, 2009, and the court's dissolution judgment incorporated the parties' MSA.  Article 2.2 of the MSA provided:

> "Charles shall pay Kimberly maintenance in the sum of $6,200.00 per month for a period of 60 months at which time the maintenance shall be reviewable upon the filing of a petition prior to the termination of the maintenance.  In addition, Charles shall pay Kimberly 25% of his annual balance of profits received from Crowe Horwath [(an accounting firm, where Charles was a partner)] as and for additional maintenance.  These amounts, coupled with the income[-]producing assets/pension described [elsewhere], will provide income to Kimberly in the approximate amount of $152,700 per year."

The dissolution decree was entered and Charles made his first maintenance payment to Kimberly in April 2009.

¶ 5    In a prior appeal, we held that the trial court correctly interpreted article 2.2 of the MSA as stating that Charles would pay to Kimberly approximately $152,700 per year in maintenance, or approximately $12,725 per month.  *In re Marriage of Kuyk*, 2013 IL App (2d) 120989-U, ¶ 26.  We also noted the trial court's comment that, to the extent there was any ambiguity in the MSA, it would be construed against Charles since he drafted the agreement.  *Id*. ¶ 14.

¶ 6    Charles made his 60th maintenance payment in April 2014; thereafter, he stopped paying maintenance.  In June 2014 Kimberly filed a "Petition for Declaratory Judgment" and a petition to review maintenance.  The petitions were largely duplicative, and the trial court considered them together as a single petition for review.  We will do the same.  Kimberly's review petition asserted that Charles's maintenance obligation remained extant and had not terminated.  In

response, Charles filed a "Motion for Summary Judgment" and a supporting memorandum, which asserted that his maintenance obligation had "automatically terminated" at the end of the 60-month period. Charles also argued that Kimberly's petition was barred (1) under the MSA, because it was not filed "prior to the expiration of the period of review," and (2) under the Illinois Marriage and Dissolution of Marriage Act (the Marriage Act), because Kimberly had not alleged a substantial change in circumstances, a necessary condition to "modify" or restart maintenance (750 ILCS 5/510(a-5) (West 2012)). Further, because maintenance had terminated, according to Charles, under the holding in *Rice v. Rice*, 173 Ill. App. 3d 1098 (1988), the trial court lacked "jurisdiction" to entertain Kimberly's review petition.

¶ 7     Following a hearing, the trial court found that maintenance terminated at the end of the 60-month period and that Kimberly's failure to file her review petition within the 60-month period "denied the Court jurisdiction to continue hearing the matter." The court also entered a written order granting Charles's "Motion for Summary Judgment," effectively denying the petition. Kimberly appealed.

¶ 8                                   II. ANALYSIS

¶ 9     As an initial matter, we note that the labels of the parties' pleadings in the trial court, *e.g.*, "summary judgment," do not control our review. See *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102 (2002) (the substance of a petition, and not its label, controls its identity). As noted, we construe Kimberly's pleadings as a single petition for review and Charles's motion and memorandum as a response thereto.

¶ 10    This case requires us to consider the parties' MSA and the trial court's jurisdiction. We address jurisdiction first, which we review *de novo*. *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 26. Kimberly contends that the trial court had

jurisdiction to consider her review petition even though it was filed after the expiration of the 60-month period. Charles disagrees. He asserts that any order granting Kimberly's petition would be "void" for lack of jurisdiction because it would contravene the MSA and the Marriage Act. Although the parties were not specific in their pleadings (or their appellate briefs), the parties invoke the concept of subject matter jurisdiction, which is the circuit court's inherent power to hear and decide a given case. As noted, Charles relies on *Rice v. Rice*, 173 Ill. App. 3d 1098 (1988), for support.

¶ 11    In *Rice*, as part of the parties' dissolution decree, the trial court ordered the petitioner (former husband) to pay $1,000 monthly maintenance to the respondent (former wife) for a period of 42 months. Twenty-four days after the final maintenance payment, the respondent filed a petition to modify the maintenance award. The trial court denied the petition and the appellate court affirmed, stating, "The respondent's petition to modify the maintenance award *** was untimely, was filed after payment in full of the maintenance award and after the trial court's *jurisdiction* to modify the maintenance award had terminated." (Emphasis added.) *Id.* at 1103. The *Rice* court noted that the trial court in the dissolution judgment "did not *reserve jurisdiction* to review the award of rehabilitative maintenance at the end of the 42 months." (Emphasis added.) *Id.* at 1099.

¶ 12    We find Charles's reliance on the jurisdictional language in *Rice* misplaced. Jurisdiction is a loaded word and, in *Rice*, it was incorrectly used to suggest that Illinois circuit courts derive their subject matter jurisdiction from statutes, such as the Marriage Act. Under that view, if a party failed to comply with a statutory prerequisite—say, a pleading requirement—that failure seemingly divested the court of jurisdiction to hear and decide the case altogether. *Rice* was by

no means alone in making this mistake (see, *e.g.*, *City of Marseilles v. Radke*, 287 Ill. App. 3d 757 (1997); *In re Shaw*, 153 Ill. App. 3d 939 (1987)), but it is a mistake nonetheless.

¶ 13    Under the state constitution of 1970, excepting administrative review and suits against the State in the Court of Claims (irrelevant here), the circuit court is a court of original jurisdiction over general legal subject matter. See *Belleville Toyota, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 199 Ill. 2d 325, 336 (2002) (citing Ill. Const. 1970, art. VI, § 9). Accordingly, because the circuit court's jurisdiction is of constitutional dimension, it cannot be constrained by a statute, or by a party's compliance with a statute, such as the Marriage Act. See *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 530 (2001) (stating that "a circuit court is a court of general jurisdiction, which need not look to the statute for its jurisdictional authority"). Both the supreme court and this court have expressed this principle in a variety of contexts. See, *e.g.*, *McCormick v. Robertson*, 2015 IL 118230 (child custody); *LVNV Funding, LLC v. Trice*, 2015 IL 116129 (debt collection); *In re Luis R.*, 239 Ill. 2d 295 (2010) (juvenile delinquency); *People v. Glowacki*, 404 Ill. App. 3d 169 (2010) (bond forfeiture); *In re Estate of Pellico*, 394 Ill. App. 3d 1052 (2009) (guardianship); *In re Andrew B.*, 386 Ill. App. 3d 337 (2008), *aff'd*, 237 Ill. 2d 340 (2010) (involuntary commitment).

¶ 14    The only prerequisite to the circuit court's subject matter jurisdiction "is whether the asserted claim, legally sufficient or not, was filed in the proper tribunal" (*In re Luis R.*, 239 Ill. 2d at 303), that is, whether it belongs to the class of cases generally heard in the circuit court (*In re M.W.*, 232 Ill. 2d 408, 415 (2009) (quoting *Belleville Toyota, Inc.*, 199 Ill. 2d at 334)). Here, undoubtedly, issues related to the parties' dissolution and post-decree maintenance were ordinary, justiciable matters for a circuit court to consider. Once Kimberly filed her petition, the trial court's subject matter jurisdiction was triggered and it possessed the authority to adjudicate

her claims. See *In re Luis R.*, 239 Ill. 2d at 304. Put differently, parties may, by agreement, *revest* the court with jurisdiction (*People v. Bailey*, 2014 IL 115459, ¶ 25), but they may not *divest* the court of jurisdiction. Thus, even if maintenance had terminated (as in *Rice*), or Kimberly's petition was barred by the MSA or insufficient under the Marriage Act, the court's subject matter jurisdiction—the power to hear the petition and render a decision on its merits—was *not* affected.

¶ 15    To the extent that *Rice* and similar cases discuss maintenance petitions in jurisdictional terms, and speak of the need to "reserve" jurisdiction over post-decree matters (see *In re Marriage of Heller*, 153 Ill. App. 3d 224 (1987); *In re Marriage of Cannon*, 132 Ill. App. 3d 821 (1985), *rev'd on other grounds*, 112 Ill. 2d 552 (1986); *In re Marriage of Fairchild*, 110 Ill. App. 3d 470 (1982)), those cases are vestiges of an outmoded view of jurisdiction and we decline to follow them. As discussed in those cases, the concept of reserving "jurisdiction" is best understood as the court placing the parties on notice that it intends to revisit certain post-decree issues down the line (like maintenance, child support, income calculations, asset valuations, etc). We emphasize, however, that the form of that notice—whether the trial court says "jurisdiction" when it really means "issue"—or a lack of notice altogether is in no way jurisdictional. See *In re M.W.*, 232 Ill. 2d 408, 422 (2009) ("not every error made by the trial court or every failure to strictly comply with the provisions of the statute creating the justiciable matter is an act in excess of statutory authority that renders the court's judgment void").

¶ 16    The through line is that the circuit court will *always* have subject matter jurisdiction to address a party's post-decree petition, regardless of what the parties agreed to in their MSA, because the circuit court is where post-dissolution matters are heard. That does not mean that a post-decree petition necessarily has merit and will succeed. The petition might fail for any

number of procedural or substantive reasons (*e.g.*, it could be barred by the MSA). Or, the court might make any number of errors when it considers the petition and reaches its decision. But those missteps would in no way divest the court of subject matter jurisdiction. See *In re Luis R.*, 239 Ill. 2d at 303. Here, since the trial court had subject matter jurisdiction to adjudicate Kimberly's petition, the court erred to the extent that it denied the petition on jurisdictional grounds.

¶ 17    Furthermore, we determine that, under well-settled principles of contract interpretation, the trial court was *not* prevented from considering the petition and conducting a general review of maintenance under the terms of the parties' MSA. See *Blum v. Koster*, 235 Ill. 2d 21, 35 (2009) (where MSA provides for general review of maintenance, it is unnecessary to show a substantial change in circumstances). An MSA is a contract between the parties and our primary objective is to give effect to the parties' intent. *In re Marriage of Coulter*, 2012 IL 113474, ¶ 19 (citing *Blum*, 235 Ill. 2d at 33). Our interpretation of the MSA is a question of law, which we also review *de novo*. *Id.*

¶ 18    As noted, article 2.2 of the MSA provided that Charles would pay Kimberly maintenance "for a period of 60 months at which time the maintenance shall be reviewable upon the filing of a petition prior to the termination of the maintenance." Charles argues, and the trial court found, that under article 2.2 his maintenance obligation "automatically terminated" in April 2014 after 60 monthly maintenance payments, and that Kimberly was thereafter barred from filing a petition for review. Kimberly argues that Charles's maintenance obligation did not terminate after 60 months; rather, maintenance became *reviewable* after 60 months and her review petition was filed "prior to the termination of the maintenance"—an event that has yet to occur.

¶ 19    Given the inherent tension between the phrases "at which time," "reviewable upon," and "prior to," we find article 2.2 to be ambiguous because it is susceptible to more than one reasonable interpretation.  The agreement is ambiguous as to whether, at the 60-month mark, maintenance became reviewable (as Kimberly argues) or terminated (as Charles argues).  Because of the ambiguity, we must construe the MSA against Charles, since he was the party who drafted it.  See *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004) (if the words used in a contract "are reasonably susceptible to more than one meaning, they are ambiguous and will be strictly construed against the drafter").  Accordingly, we determine that, under the terms of the MSA, maintenance became reviewable after 60 months and did not terminate.  Therefore, Kimberly's review petition was not time-barred; indeed, without a petition for review, Charles's maintenance obligation could not have terminated.  See, *e.g.*, *In re Marriage of Rodriguez*, 359 Ill. App. 3d 307, 313 (2005) (stating that when a court orders reviewable maintenance, "[u]ntil a party petitions for review, the maintenance award shall continue as ordered").

¶ 20    We also note that Charles's reliance on parol evidence is unavailing.  When a contract is ambiguous, we may consider extrinsic evidence to determine the parties' intent (*Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007)), but it is axiomatic that the evidence be probative of the parties' intent.  First, Charles relies on a form "Order of Support," which was entered by the trial court in 2009 in conjunction with the dissolution judgment.  According to Charles, the order reflects that his "support" obligation terminated in April 2014.  Not so.  The order states that *child* support would terminate in April 2014; it does not refer to the duration or termination of maintenance.  And, the notation concerning child support was obviously erroneous because the parties' daughter was long ago emancipated and there was no child support ordered in this case.

Since the support order does not refer to the termination of maintenance, it sheds no light on the parties' intent regarding when maintenance would terminate.

¶ 21    Second, Charles references three pleadings "filed" by Kimberly in June 2014. According to Charles, the pleadings Kimberly "filed" reflect her acknowledgement that his maintenance obligation had already terminated and could not be reviewed. We say "filed" because only two of the pleadings appear in the record—the petition for declaratory judgment and the petition for review. The other pleading, a petition for a rule to show cause, appears only in the appendix of Charles's brief. It appears to be a copy that was faxed to Charles's counsel but was not filed with the trial court. Attachments to briefs that are not otherwise of record are not properly before this court and will not be considered. *In re O.R.*, 328 Ill. App. 3d 955, 961 (2002). That said, nothing in Kimberly's pleadings that are of record indicates that she believed that maintenance was no longer reviewable in June 2014. The trial court considered both the petition for declaratory judgment and the petition for review together because they both made the same essential point: that the dissolution judgment ordered reviewable maintenance that had not yet terminated. Given that it is based on a misreading of the record and on unfiled correspondence that is not of record, we find Charles's reliance on parol evidence unpersuasive. We reiterate that the MSA was ambiguous and should have been construed against him as the drafter.

¶ 22    One final point. Six days after the trial court entered its order denying Kimberly's review petition, Charles filed a petition for a rule to show cause concerning a separate matter (an unrelated tax liability). Although Kimberly's notice of appeal was initially timely as to the order denying her review petition, Charles's rule petition rendered that order no longer appealable. See *In re Marriage of Valkiunas*, 389 Ill. App. 3d 965, 966 (2008) (citing *In re Marriage of Knoerr*, 377 Ill. App. 3d 1042, 1049 (2007)). We stayed this appeal and ordered the parties to

supplement the record to show that Charles's petition had been resolved, or to secure an immediate-appealability finding from the trial court under Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). The parties supplemented the record with an order resolving the petition and we proceeded with our review.

¶ 23 We recognize that there is a split in authority over this issue. The First and Third Districts hold that each post-decree order is separately appealable (*In re Marriage of Demaret*, 2012 IL App (1st) 111916, ¶ 35; *In re Marriage of A'Hearn*, 408 Ill. App. 3d 1091, 1097-98 (2011)), while this district and the Fourth District maintain that a post-decree order is not appealable without a Rule 304(a) finding if another post-decree matter is pending (*In re Marriage of Duggan*, 376 Ill. App. 3d 725, 744 (2007); *In re Marriage of Gaudio*, 368 Ill. App. 3d 153, 157-58 (2006)). Until this split is resolved by our supreme court, we continue to adhere to our position as set forth in *Valkiunas*, *Knoerr*, and *Duggan*.

¶ 24 III. CONCLUSION

¶ 25 For the reasons stated, the judgment of the circuit court of Kane County is reversed and the cause is remanded for further proceedings consistent with this opinion.

¶ 26 Reversed and remanded.