2021 IL App (1st) 210123-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
November 23, 2021

No. 1-21-0123

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | |
| | ) | Appeal from the |
| PATRICIA A. ELMORE, | ) | Circuit Court of |
| | ) | Cook County |
| Petitioner-Appellee, | ) | |
| | ) | No. 13 D 9921 |
| and | ) | |
| | ) | The Honorable |
| TODD DAVID ELMORE, | ) | Dominique C. Ross, |
| | ) | Judge Presiding. |
| Respondent-Appellant. | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Howse and Lavin concurred in the judgment.

**ORDER**

¶ 1   *Held:*   Trial court did not abuse its discretion in finding no substantial change in circumstances occurred to warrant modification of maintenance, err in using date of order extending maintenance as commencement date for new review period, or err in failing to address life insurance obligation. Argument that statutory maintenance guidelines applied is forfeited.

¶ 2   The respondent, Todd David Elmore (Todd), appeals the trial court's entry of an order in a maintenance review proceeding that extended his obligation to pay maintenance to the petitioner, Patricia A. Elmore (Patricia), for an additional term of five years. For the reasons that follow, we affirm the judgment of the trial court.

¶ 3                                    I. BACKGROUND

¶ 4        Todd and Patricia were married in 1986, and a judgment for dissolution of their marriage was entered on April 1, 2015. That judgment for dissolution of marriage incorporated a marital settlement agreement to which they had agreed that same day. In pertinent part, they agreed in their marital settlement agreement that Todd would pay maintenance to Patricia. Todd is a neurologist, and in the year of the dissolution his income was $495,449. Patricia is a real estate property manager, and her income that year was $51,740. They went on to express in paragraph 6(A) of their marital settlement agreement that "it is the intent of and agreement of the parties that their respective incomes shall be equalized." Thus, every two weeks that first year, Todd was to pay $6,923.08 to Patricia as maintenance. After that, every year when the parties completed their income tax returns, each was to provide information to the other to enable a calculation of whether Todd had overpaid or underpaid maintenance for the preceding year. That financial information would also serve as a basis for calculating the required monthly maintenance payment for the forthcoming year, "so that payments from Todd to Patricia continue to equalize the gross income of the parties."

¶ 5        The marital settlement agreement also provided in its paragraph 6(C) that the above-described maintenance payments "shall terminate only upon the first to occur of the following events," which were the death of either party or Patricia's remarriage or cohabitation on a continuing conjugal basis. Additionally, paragraph 6(D) provided that maintenance would be reviewable five years from the entry of the judgment of dissolution if Patricia timely petitioned for an additional term. It went on to provide the following concerning the potential review of maintenance after five years:

           "The reviewing Court shall consider the intent of the parties pursuant to this agreement as

well as all relevant factors set forth in 750 ILCS 5/504 or in 750 ILCS 5/504 as it exists at the end of five years, except that the parties agree Patricia is employed at her full capacity working in the area of real estate management, similar to what Patricia did during the parties' marriage and Patricia is under no obligation to seek further education or retraining as a condition to continued maintenance. Besides the terminating events set forth in Paragraph 6(C) above, only a substantial change in circumstances of the parties should warrant a modification and/or limitation to the continuation of reviewable maintenance for Patricia."

¶ 6 Paragraph 3 of the marital settlement agreement required Todd to provide life insurance on his life naming Patricia as the sole irrevocable beneficiary "[f]or so long as Todd has an obligation to pay maintenance to Patricia." It set forth that Todd had an existing term life insurance policy in the face amount of $2.5 million, of which Patricia was beneficiary, which was scheduled to terminate when Todd reached 56 years of age. Paragraph 3 went on to provide the following concerning Todd's life insurance obligations in the event of an extension, modification, or termination of his obligation to pay maintenance to Patricia:

"At such time as Patricia's maintenance terminates according to the terms and conditions set forth herein, Todd's obligation to maintain insurance shall likewise terminate. However, if Patricia elects to seek an additional term of maintenance through a court of competent jurisdiction, Todd's obligation shall be reduced to the additional term and amount of maintenance, if any, that a Court awards to Patricia beyond the five years currently awarded to Patricia as set forth more fully in Paragraph 6 of this Agreement. The requirement of Todd to provide life insurance on his life for the benefit of Patricia in an amount to cover the full award of maintenance to Patricia entered from time-to-time shall

continue until such time as (a) Patricia's term of maintenance terminates and she does not seek an extension of maintenance or a Court denies her request for an extension; or (b) a Court of competent jurisdiction enters an order terminating Patricia's maintenance for any reason, including but not limited to the terminating events set forth in Paragraph 6 below."

It also provided Patricia with a lien against Todd's estate in the event that Todd failed to maintain life insurance while he had a duty to do so.

¶ 7     The transcript of the court proceedings that occurred on April 1, 2015, when the judgment of dissolution was entered, indicates that Todd's attorney brought to the trial court's attention that the final version of the marital settlement agreement provided for maintenance to be reviewable after five years and stated that maintenance would be continued subject to a " 'substantial change in circumstances.' " Todd's attorney stated to the trial court that a "substantial change in circumstances" was not the applicable legal standard for a maintenance review, but rather "it's just where the parties are standing at the time of the review." Todd's attorney stated that she had "redlined that out a number of times and it's here," and she wanted the record to reflect that it was the "wrong standard." Patricia's attorney responded that it was what the two parties had agreed to. The trial court responded, "Right. The parties can contract to do whatever they want to do as long as it's not unconscionable." The court further stated, "[I]f the parties agree to it, they don't have to [accept] the standard as long as it's not unconscionable." The attorneys agreed with this.

¶ 8     Nearly five years later, on December 9, 2019, Patricia filed the instant petition seeking a review of maintenance and the extension of maintenance payments for an additional term. She asserted that the intent of the parties as expressed in the marital settlement agreement had been that their incomes be equalized, that Patricia could seek to extend maintenance prior to the end of the five-year reviewable term, and that only a substantial change in the parties' circumstances

would warrant a limitation on the continuation of reviewable maintenance to Patricia. She alleged that the parties had exchanged their financial information on an annual basis, and there had been no substantial change in the circumstances of either party that would warrant a limitation to the continuation of reviewable maintenance.

¶ 9        Todd filed a response objecting to an extension of maintenance. In that response, he asserted "that maintenance was only under review after five years if a substantial change in Patricia's circumstances warranted an extension, which it does not." He asserted that the parties had "lived a modest lifestyle" during their marriage, that Patricia had received over $1.3 million in maintenance in the five years since their divorce, that Patricia had been awarded half of the parties' assets in the divorce valued at approximately $500,000, that the parties continued to own real estate together from which Patricia received half the income, and that Todd was 56 years old and wanted to reduce his work pace to retire in the near future. Finally, Todd requested alternatively that if the court did conclude that an extension of maintenance was warranted, "the parties' Judgment sets forth that this Court should reduce the maintenance that Patricia would receive using the 2019 amendments or its judgment own judgment [*sic*] in calculating the maintenance Patricia receives despite her lack of need for financial support."

¶ 10        On July 31, 2020, an agreed temporary order was entered by the trial court providing that Todd shall continue to pay maintenance pursuant to the judgment until further order of court.

¶ 11        An evidentiary hearing on the petition was set for December 1, 2020. Prior to that hearing, the parties entered into a trial stipulation. That stipulation provided that both parties were then age 56 and continued to jointly own four rental properties in Alabama. Since their divorce, Patricia had maintained employment as a property manager, and her only income was from that employment and the jointly-owned rental properties. In the five tax years since the parties' divorce,

Patricia's annual income had been between $51,740 and $74,555, increasing year-over-year in all years but one. Todd had maintained employment as a neurologist during that time, and his only income was from that employment and the jointly-owned rental properties. His income during the five tax years since the divorce ranged between $495,449 and $669,830, and it also increased year-over-year in all years but one. Each year since the divorce, the parties used an accountant to provide them with a calculation equalizing their income for the year. In each of those five years, the payments made by Todd to Patricia ranged between $216,889 and $291,208, and the total payments had been $1,275,027. Todd had also made year-to-date payments through October 2020 in the amount of $237,000.

¶ 12      At the brief evidentiary hearing, Patricia testified first. She confirmed her signature on the petition and trial stipulation and that the allegations and statements in them were true and correct. She testified that she was not aware of any substantial change in the circumstances of either party that would justify a modification or limitation to the equal division of income between them.

¶ 13      Todd then testified that over the preceding five years he had worked very hard to ensure that both he and Patricia were financially secure, as the divorce had occurred shortly after their financial setback of moving from Alabama to different cities in Illinois and both of them starting new jobs. He testified that he "pulled out all the stops, worked as hard as I could" with the understanding that at the end of five years they would "be caught up and on our feet." He testified that he disagreed with Patricia's request to extend maintenance because he had paid $1.5 million to her since the time of the divorce, she had received half of their assets prior to the divorce, and he had paid a large amount and "worked above and beyond what just about any practicing neurologist could do over the last five years," which was not fair or sustainable. He testified that Patricia was financially secure, with a home in Chicago, money in the bank, a retirement portfolio, employment,

and no dependent children or parents to take care of. He testified that there had been a substantial change in circumstances since the time of the marital settlement agreement, in that both of them were secure and "much better off financially" since that time. He also testified he was having health issues, having undergone a prostate biopsy and having some kidney issues.

¶ 14     In a written order entered on January 8, 2021, the trial court granted the petition for extension of maintenance payments. The court found that the plain language of the parties' agreement was that maintenance would continue unless one of the terminating events specifically set forth in the agreement occurred and that, in the event of a substantial change in circumstances, then modification or limitation of reviewable maintenance would possibly occur. The court declined to interpret the words "modification" or "limitation" to mean "termination." The court explained that, while it was directed to consider all relevant factors set forth in section 504 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/504 (West 2020)), the parties themselves had reached certain agreements in the marital settlement agreement that negated certain statutory factors, such as Patricia's future earning potential or a duty to obtain further education or training in an effort to obtain more income. Notwithstanding this, the trial court found, Patricia's income had increased since the entry of judgment in 2015, and Todd's income had increased as well, such that he continued to earn eight to ten times more annually than Patricia. The court found that this disparity in income was one of the factors that had been considered when agreeing to the award of maintenance. After setting forth the parties' respective incomes in the five years since the judgment of dissolution, the court found that the changes in income did not rise to the level of being a substantial change in circumstances warranting modification or limitation of maintenance. The court thus ordered that reviewable maintenance paid to Patricia by Todd equalizing their gross income under the terms set forth in their marital settlement agreement shall continue for an

additional five-year period. It further ordered that the requirement that Patricia timely file a petition to extend maintenance prior to the end of the five-year period remains, "said five years being from the date of entry of this Order." Todd then filed a timely notice of appeal.

¶ 15                                    II. ANALYSIS

¶ 16        Todd's first argument on appeal is that the trial court's finding that no substantial change had occurred in the parties' circumstances since the dissolution was erroneous and constituted an abuse of discretion. He asserts that a substantial change did occur, in that the financial stability and standard of living of both parties has improved dramatically since their divorce, and that, for this reason, the trial court should have denied the petition to extend maintenance.

¶ 17        We begin our analysis by recognizing that Todd and Patricia agreed in their marital settlement agreement to apply a "substantial change in circumstances" standard that, as a general rule, is not applicable when a court conducts a maintenance review proceeding to determine whether maintenance should be modified, terminated, or continued without change. See *Blum v. Koster*, 235 Ill. 2d 21, 35-36 (2009); *In re Marriage of Heasley*, 2014 IL App (2d) 130937, ¶ 26. Instead, a general review of maintenance simply requires the trial court to consider the factors set forth in sections 504(a) and 510(a-5) of the Act (750 ILCS 5/504(a), 510(a-5) (West 2020)). *Blum*, 235 Ill. 2d at 36; *Heasley*, 2014 IL App (2d) 130937, ¶ 27. However, parties may choose to modify this standard of review in their marital settlement agreement, and an agreement to do so is binding on the court. *Blum*, 235 Ill. 2d at 32; 750 ILCS 5/502 (West 2020). We do not interpret either party's argument on appeal to dispute the fact that they agreed that a "substantial change in circumstances" standard would be applied when maintenance was reviewed. Specifically, their agreement stated, "Besides the terminating events set forth in Paragraph 6(C) above, only a substantial change in circumstances of the parties should warrant a modification and/or limitation to the continuation of

reviewable maintenance for Patricia."

¶ 18    In situations where the substantial change in circumstances standard applies, it means that the needs of the party receiving maintenance or the ability of the other party to pay that maintenance has changed. *In re Marriage of Dea*, 2020 IL App (1st) 190234, ¶ 18 (citing *In re Marriage of Anderson*, 409 Ill. App. 3d 191, 198 (2011)); *In re Marriage of Shen*, 2015 IL App (1st) 130733, ¶ 132. A trial court's determination about whether a substantial change in circumstances has occurred is reviewed for abuse of discretion. *In re Marriage of Logston*, 103 Ill. 2d 266, 287 (1984). A trial court's decision concerning the modification of maintenance in a maintenance review proceeding will likewise not be disturbed absent a clear abuse of discretion. *Blum*, 235 Ill. 2d at 36. To the extent that resolution of this appeal involves the interpretation of the parties' marital settlement agreement, such issues are reviewed *de novo* as questions of law. *Id.* at 33. A marital settlement agreement is interpreted in the same manner as any other contract, and the court's duty is to ascertain the intent of the parties from the plain language used in their agreement. *Id.*

¶ 19    In support of his argument that the trial court erred in finding that a substantial change of circumstances had not occurred here, Todd points out that Patricia never testified that she had a need for continuing maintenance to support the lifestyle established during the parties' marriage. He cites his own testimony that the parties are markedly better off five years after their divorce than they were during their marriage, based primarily on how hard he worked to ensure that both of them were financially stable after settling into new homes and jobs in new cities following their divorce. He cites his understanding that "at the end of five years, we would be caught up and on our feet." He cites to the fact that neither of them has any debt, both have significant retirement assets, and both of them own real estate separately and jointly with each other. He argues that his

" 'pull[ing] out all the stops' " to ensure the financial security of both parties constitutes a substantial change in circumstances sufficient to justify the termination of maintenance to Patricia.

¶ 20 Patricia responds that the trial court's extension of maintenance was a proper exercise of its discretion, as there was no evidence demonstrating a substantial change in the circumstances of the parties that would warrant a modification of maintenance. She cites the fact that the parties agreed in the marital settlement agreement that their respective incomes would be equalized. By agreeing to do so, she argues, the parties effectively contemplated and provided for how any change in their income was to be handled. Thus, the fact that Patricia received $1.3 million in past maintenance from Todd was something that was anticipated by the terms of their agreement. That amount could have been more or less, depending on the amount of income both of them made. She contends that, while both of them experienced an increase in income in the five years since the divorce, Todd's income is still eight to ten times more than her income, and this is the same percentage as it was five years previously. She notes that both parties are employed in the same jobs as they were at the time of the divorce, and the marital settlement agreement specifically removes any obligation on her part to seek to improve her employment. Thus, she argues, the parties' financial circumstances are substantially unchanged from where they were five years earlier. She additionally argues that any understanding by Todd that equalization would not continue after five years is contrary to the terms of the marital settlement agreement.

¶ 21 We find no abuse of discretion in the trial court's determination that no substantial change in circumstances had occurred that would warrant a modification or limitation on the continuation of maintenance by Todd to Patricia. Todd's argument is essentially that in the five years since the parties' divorce, his income has been sufficiently high in relation to Patricia's that his payments to her, in addition to her own income and asserts, have enabled her to become financially stable. We

recognize that there can be situations in which newfound financial security can amount to a substantial change in circumstances. See *In re Marriage of Susan*, 367 Ill. App. 3d 926, 931 (2006). However, it is also the law that where parties have entered into a marital settlement agreement, a substantial change in circumstances will not be found when the parties' present circumstances were contemplated at the time they entered into their agreement. *In re Marriage of Salvatore*, 2019 IL App (2d) 180425, ¶ 24. Here, as recognized by the trial court, the disparity in the parties' respective incomes and earning capacities was one of the factors considered when agreeing to the award of maintenance and the equalization of incomes. Thus, the fact that Todd would make payments to Patricia in approximately the amount he did over five years was contemplated by the agreement and is not a substantial change from the circumstances existing at that time.

¶ 22　　　　Furthermore, the trial court did not abuse its discretion in concluding that the increase in Todd's income of approximately $175,000 over the five years or the increase in Patricia's income of approximately $23,000 was not a substantial change in circumstances. The increase or steady growth of a party's income does not constitute a substantial change in circumstances when it was based on events contemplated and expected at the time when the judgment of dissolution was entered. *Dea*, 2020 IL App (1st) 190234, ¶ 21; *Salvatore*, 2019 IL App (2d) 180425, ¶ 24. Here, both parties are employed in the same jobs they had at the time of the dissolution. The respective increases in income that they both experienced over a five-year period were steady and not so vast that the parties could not have reasonably contemplated or expected at the time of their agreement that such increases would occur. Moreover, the fact that the parties agreed to an equalization of their income lessens the extent to which any change in income by either of them would amount to a substantial change in circumstances.

¶ 23　　　　Todd's second argument on appeal is that, if no substantial change in circumstance occurred

that would justify the termination of maintenance, the trial court nevertheless erred in failing to consider the statutory maintenance guidelines in setting the amount and duration of maintenance to Patricia. See 750 ILCS 5/504(b-1) (West 2020). We are somewhat perplexed by this argument, as applying the statutory guidelines to set a new amount or duration of maintenance would seem to constitute a modification of maintenance in the absence of a substantial change in circumstances, which appears contrary to the parties' marital settlement agreement. Also, the parties' gross annual income appears to exceed the $500,000 threshold at which the guidelines no longer apply in any event, a point that Todd acknowledges in his brief. See *id.* § 504(b-1)(1). Patricia argues that we do not need to reach the merits of this issue, because Todd has forfeited appellate review of this argument by never arguing to the trial court that it should apply the statutory maintenance guidelines. A party's failure to raise an issue before the trial court forfeits review of that issue on appeal. *In re Marriage of Gabriel and Shamoun*, 2020 IL App (1st) 182710, ¶ 72. The purpose of this rule is to encourage parties to raise issues in the trial court, thus ensuring both that the trial court is given an opportunity to correct its own errors prior to appeal and that parties do not obtain reversal through their own inaction. *Id.*

¶ 24 In response, Todd contends that he did raise this issue in the trial court. He directs our attention to a sentence in his response in opposition to Patricia's petition to extend maintenance that stated, "Even if this Court were to find an extension warranted, the parties' Judgment sets forth that this Court should reduce the maintenance that Patricia would receive using the 2019 amendments or its judgment own judgment [*sic*] in calculating the maintenance Patricia receives despite her lack of need for financial support." Assuming for argument's sake that this sentence suffices as a request to the trial court that it apply the guidelines, it is clear that Todd never pressed the trial court for a ruling that the guidelines should be applied to this case. A party's failure to

request a ruling from the trial court forfeits appellate review of an issue. *Tirado v. Slavin*, 2019 IL App (1st) 181705, ¶¶ 42-43. We hold that Todd's argument concerning application of the maintenance guidelines is forfeited.

¶ 25        Todd's third argument is that the trial court erred in setting the commencement date for the new five-year term of maintenance as the date of the entry of its order (January 8, 2021), rather than the date that the prior five-year term had expired (March 31, 2020). This was a difference of 9 months and 8 days. Todd argues that the trial court's use of the later date for commencement of the five-year term was a misinterpretation of the parties' marital settlement agreement, which specifies five-year terms for maintenance.

¶ 26        Patricia argues that the marital settlement agreement contains no provision that any additional term after the expiration of the first five-year term must also be five years. She points out that it provides that maintenance "shall be reviewable five years from the entry of the Judgment" if she "timely petitions a court for an additional term," and it does not specify what that additional term must be. We agree with this argument. Upon reviewing the parties' marital settlement agreement, we find nothing in it whereby the parties agreed that maintenance would be continued or reviewed in terms of exactly five years. Thus, the default rule applies by which a trial court has the authority to set a time at which maintenance will be reviewed. See *In re Marriage of Rodriguez*, 359 Ill. App. 3d 307, 312 (2005). We find no error in the trial court's use of the date of entry of its order as the commencement date of the five-year period by which Patricia must file any further petition to extend maintenance.

¶ 27        Todd's final argument on appeal is that the trial court erred in failing to include in its order any provision adjusting his obligation to maintain life insurance, as provided by the parties' marital settlement agreement. He points out that paragraph 3 of the parties' marital settlement agreement

contemplates that Todd's obligation to maintain life insurance naming Patricia as beneficiary "shall be reduced to the additional term and amount of maintenance, if any, that a Court awards to Patricia beyond the five years currently awarded to Patricia." He argues that the trial court misinterpreted the marital settlement agreement and abused its discretion by failing to include a provision adjusting his life-insurance obligation in its order. He requests this court to remand the case for further proceedings to determine the reduction on his life insurance obligation.

¶ 28 Patricia argues that Todd's life insurance obligation is a matter controlled by operation of the marital settlement agreement, not something that requires the amount to be set by court order. We agree with Patricia on this point. Paragraph 3 of the marital settlement agreement provides that, if Patricia seeks an additional term of maintenance, Todd's obligation shall be reduced from the amount of the preexisting term life policy to the "amount of maintenance, if any, that a Court awards to Patricia beyond the five years currently awarded." It goes on to reiterate that Todd's requirement to provide insurance on his life for Patricia's benefit is "in an amount to cover the full award of maintenance to Patricia entered from time-to-time." These are effectively known amounts, although we recognize they are dependent on estimates as to the parties' income for an upcoming year. Ultimately, though, there is nothing in paragraph 3 of the parties' marital settlement agreement that specifically requires the trial court, in conducting a maintenance review, to also calculate or set the amount of life insurance that Todd is required to maintain. As it does not appear that Todd ever requested the trial court to make such calculation, there was certainly no error on the part of the trial court by not including such provision in its order *sua sponte*.

¶ 29                                    III. CONCLUSION

¶ 30 For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 31 Affirmed.